IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MEDICAL TECHNOLOGY, INC. d/b/a BLEDSOE BRACE SYSTEMS,<br>    Plaintiff/Counterclaim Defendant, | CIVIL ACTION<br>NO. 10-mc-00100 |
| v. | |
| BREG, INC.,<br>    Defendant/Counterclaim Plaintiff, | Principal Case Currently Pending in the U.S. District Court for the Northern District of Texas, Dallas Division, No. 3:09-cv-01328B |
| PRO (MEDEAST) and PROFESSIONAL RECONSTRUCTIVE ORTHOPEDICS, INC. D/B/A MEDEAST POST-OP SURGICAL,<br>    Movants. | |

HENRY S. PERKIN                                                                                                      September 21st, 2010
UNITED STATES MAGISTRATE JUDGE

## MEMORANDUM

Before the Court are two Motions by non-parties Professional Reconstructive Orthopedics, Inc. d/b/a MedEast Post-Op Surgical ("MedEast Post-Op") and Pro (Medeast) (collectively "MedEast") to Quash Third-Party Subpoenas issued by Breg, Inc. ("Breg")(Dkt. Nos. 1 & 2), and Breg's Responses (Dkt. Nos. 5 & 6).[1] The subject subpoenas arise from a patent infringement case pending in the District Court for the Northern District of Texas. MedEast Post-Op and Pro (MedEast) are not parties to that litigation. For the reasons that follow, the Motions to Quash will be denied.

---

[1] The Motions to Quash were filed on May 26, 2010. On May 27, 2010, the Honorable James Knoll Gardner executed an Order referring both of these Motions to Quash for disposition pursuant to his March 19, 2007 Standing Order. The referral Order was docketed on June 2, 2010 and Breg's Responses were filed on June 8, 2010

**I.     BACKGROUND.**

On July 15, 2009, Medical Technology, Inc. d/b/a Bledsoe Brace Systems ("Bledsoe") initiated a patent infringement case in the District Court for the Northern District of Texas against Defendant Breg. See, Medical Technology, Inc. d/b/a Bledsoe Brace Systems v. Breg, Inc., No. 3:09-cv-01328-B (N.D. Tex.), D.I. 8 ("the Texas litigation"). Bledsoe and Breg manufacture orthopedic, post-operative, reconstructive and rehabilitative products for hospital and orthopedic offices worldwide. Bledsoe is a Texas corporation and Breg is a California corporation. Numerous products from each company compete directly in the marketplace, including three groups of products at issue in the Texas litigation: (1) cold therapy devices that circulate a cool fluid through a pad applied to the knee or other body part; (2) post-operative braces incorporating an adjustable hinge; and (3) functional braces for treating unicompartmental osteoarthritis.

In selling its products, Breg, in part, associates itself with other companies that act as distributors or sales representatives. In turn, these distributors and sales representatives facilitate the sale of the products by forming relationships with doctors and other users, providing technical information about the products and acting as conduits and facilitators for the sale of the products and reimbursement from insurance providers. The distributors and sales representatives retain a portion of the revenue in the form of profit or commission. MedEast formerly distributed Breg products. To the best of Breg's knowledge, MedEast are now distributors or sales representatives of the Bledsoe products at issue in the Texas litigation, which products allegedly infringe Breg's patents. Breg's counterclaims in the Texas litigation allege that Bledsoe infringes Breg's patents by its supply of infringing products to MedEast, but Bledsoe denies this

allegation.

Discovery commenced in the Texas litigation on March 18, 2010. On and since that day, Breg has served numerous interrogatories and document requests on Bledsoe. Breg contends that it has only received a handful of documents responsive to the requests, none of which would be responsive to the subject subpoenas. On May 12, 2010, Breg served MedEast with the subpoenas duces tecum requesting information on sixteen substantive topics on or before May 25, 2010. The subpoenas addressed to MedEast Post-Op and Pro (MedEast) are identical. Breg believes that MedEast may not only have evidence of Bledsoe's direct infringement of Breg's patents, but also Bledsoe's indirect infringement of Breg's patents and of the willfulness of Bledsoe's infringement of Breg's patents. MedEast has not denied having such evidence or argued that it would be difficult to locate and produce related documents. MedEast states that it does not "sell Bledsoe products" but rather that it "services individuals who use orthopedic products." MedEast responded to the subpoenas by filing the instant Motions to Quash.

## II.     **DISCUSSION**.

MedEast moves to quash the subpoenas pursuant to Federal Rule of Civil Procedure 45(c)(3)(A)(iii) and (iv) because it claims that the subpoenas require disclosure of privileged or other protected matter and subject it to undue burden. In support of these Motions, MedEast claims that: (1) the subpoenas are unduly burdensome because they seek information that is allegedly not relevant to Breg's defenses or claims in the Texas litigation, and they are unreasonably cumulative of information better obtained from parties in the Texas litigation; (2) the subpoenas improperly seek production of highly confidential information; and (3) the

3

apparent purpose of the subpoenas is to harass MedEast and gain business intelligence.

Until recently, MedEast was a distributor of the Breg patents at issue in the Texas litigation. Now, to the best of Breg's knowledge, MedEast is a distributor of the Bledsoe products at issue in the Texas litigation which allegedly infringe Breg's patents. Breg's counterclaims in the Texas litigation allege that Bledsoe infringes Breg's patents by virtue of Bledsoe's supply of allegedly infringing products to MedEast, but Bledsoe denies this allegation. Thus, Breg's subpoenas are intended to explore these disputed issues. Each of MedEast's contentions are examined *seriatim*.

    **A.    Whether the Subpoenas are Unduly Burdensome.**

In order to establish "undue burden" under Rule 45 (c)(3)(A)(iv), MedEast must show a "clearly defined and serious injury." City of Petersburg v. Total Containment, Inc., Misc. No. 07-191, 2008 WL 1995298, at *2 (E.D. Pa. May 5, 2008)(Stengel, J.)(quoting Transcor, Inc. v. Furney Charters, Inc., 212 F.R.D. 588, 592-93 (D. Kans. 2003)(general assertions of competitive disadvantage insufficient to show undue burden for purpose of a motion to quash)). MedEast broadly states that does not believe it has any documents that may be relevant to this litigation and it is not involved in the day-to-day operations of Bledsoe. Breg notes that MedEast has not denied having responsive evidence or argued that it would be difficult to locate and produce related documents. "Not being involved in the day-to-day operations of Bledsoe" allows, according to Breg, that Bledsoe may be involved in MedEast's operations as one would expect in a supplier-distributor relationship. Moreover, MedEast is represented by Bledsoe's trial counsel.

        1.    <u>Whether the Subpoenas Seek Irrelevant Information</u>.

4

MedEast contends that the subpoenas are unduly burdensome because they seek information regarding MedEast's business relationships that is unlikely to lead to any admissible evidence supporting Breg's defenses and counterclaims, and MedEast's analysis of competitor products is not relevant to any of the claims at issue, but is more proper for expert opinion. MedEast thus asks this Court to quash the subpoenas.

The scope of discovery is provided in Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense - including the existence, description, nature, custody, condition and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). Relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to another matter that could bear on any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Saunders, 437 U.S. 340, 352 (1978). Although Federal courts have imposed broader restrictions on the scope of discovery when a non-party is targeted, see Thompson v. Glenmede Trust Co., No. CIV.A. 92-5233, 1995 WL 752422, at *2 n.4 (E.D. Pa. Dec. 19, 1995)(Hutton, J.)(citations omitted), discovery rules are to be accorded broad and liberal construction. Wright v. Montgomery County, No. CIV.A. 96-4597, 1998 WL 848107 (E.D. Pa. Dec. 4, 1998)(citing Am. Health Sys. v. Liberty Health Sys., No. 90-3112, 1991 WL 30726, at *2 (E.D. Pa. Mar 5, 1991)(Naythons, J.)). The relevance standard depends on the context of the particular action, and the determination of relevance is within the district court's discretion. Thompson, 1995 WL 752422 at *2 n.4.

This Court is persuaded by Breg's arguments that the information it requests from MedEast is relevant to the issues pending in the Texas litigation. For example, Breg seeks

documents that: (1) could lead to evidence of Bledsoe's indirect infringement of Breg's patents which necessarily requires evidence of direct infringement by another entity such as MedEast; (2) could lead to evidence that Bledsoe's infringement was done knowingly, actively and willfully; (3) could lead to objective evidence that Breg's patents are not invalid for obviousness and Bledsoe's patents are invalid for obviousness. Mem. Law in Opp'n Mot. to Quash, pp. 10-12.

MedEast provides nothing more than conclusory statements to support its contentions, and does not provide affidavits or declarations in support of its position. Thus, MedEast fails to prove that the subpoenas seek irrelevant information.

    2.  <u>Whether the Subpoenas Seek Privileged Information</u>.

MedEast next contends that the subpoenas seek information protected by the attorney-client privilege or will inevitably lead to privileged communications between MedEast and its counsel related to the subpoenas, and such requests are impermissible and must be quashed pursuant to Federal Rule of Civil Procedure 45. Breg responds to this objection by noting that it has no idea whether privileged communications are responsive to the subpoena topics because MedEast has not produced a privilege log pursuant to Federal Rule of Civil Procedure 45(d)(2) and instead moved to quash the subpoenas on the basis of vague and unsupported allegations.

The party withholding documents or information upon a claim of privilege bears the burden of establishing that such materials are properly entitled to be treated as privileged. <u>See</u> <u>Conoco, Inc. v. United States Dep't of Justice</u>, 687 F.2d 724, 730 (3d Cir. 1982). MedEast's blanket assertion of privilege does not constitute the requisite showing that any of its documents which may be responsive to the subject subpoenas are privileged. This unsubstantiated statement

is not a proper basis to quash the subpoenas.

        3.      <u>Whether the Subpoenas Seek Discovery that is Unreasonably Cumulative and Duplicative of Party Discovery</u>.

Federal Rule of Civil Procedure 26(b)(2)(C)(i) provides "[o]n motion or its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive. Fed. R. Civ. P. 26(b)(2)(C)(i). MedEast argues that the subpoenas should be quashed because any responsive documents in its possession and control as to Request Nos. 1-7, 9-10 and 12-16 will also be in the custody of Bledsoe, a party in the Texas litigation. MedEast argues that it should not have to conduct a search for documents that, to the extent that they exist, are identical to those that will already be produced by Bledsoe, a party to the Texas litigation. Breg, in response, notes that Bledsoe has produced no documents in the Texas litigation that would be responsive to the subpoenas and Bledsoe most likely does not possess some of the requested documents. For example, Request Nos. 1-7, 12-13 and 15-16 do not seek only documents "constituting" communications between MedEast and Bledsoe, but also documents "relating to" communications such as MedEast's phone records, notes and internal email reflecting or discussing the communications which would not be in Bledsoe's possession. For those documents that constitute communications between MedEast and Bledsoe, Breg has no knowledge if Bledsoe still possesses copies of those documents because Bledsoe has not produced such documents. Thus, Breg assumes that Bledsoe does not have those documents. This Court agrees that although Bledsoe may have produced some documents, Breg needs

MedEast's responsive documents not only to supplement Bledsoe's production but also to test the veracity of Bledsoe's assertions that they have produced all the documents they are required to produce. See New Park Entm't LLC v. Elec. Factory Concerts, Inc., No. 98-0775, 2000 WL 62315, at *5 (E.D. Pa. Jan. 13, 2000)(Rueter, M.J.). Accordingly, this Court is not convinced that the subpoenas seek discovery that is unreasonably cumulative and duplicative of party discovery.

>   **B.  Whether the Subpoenas Improperly Seek Production of Highly Confidential Information.**

MedEast next contends that the subpoenas should be quashed because they improperly request documents to which Breg is not entitled, specifically, MedEast's highly confidential information. As such, MedEast contends that the subpoenas should be quashed pursuant to Federal Rule of Civil Procedure 45(c)(3)(B) which permits this Court to quash or modify a subpoena if it requires the disclosure of confidential commercial information. Rule 45(c)(3)(B)(i) states "[t]o protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify a subpoena if it requires disclosing a trade secret or other confidential research, development, or commercial information." See Fed. R. Civ. P. 45(c)(3)(B)(i). Breg demands production of a number of documents in the subpoena that broadly relate to internal communications and discussions held by MedEast regarding its business decisions relating to Bledsoe and Breg. Mot., p. 7 (citing Ex. A, Doc. Req. Nos. 2-3, 8, 10-13, 15-16.) The requests also encompass "all manner of highly confidential documents including financial reports of other third parties, financial strategies, and related communications. Id.

In response, Breg notes that a Protective Order has been entered in the Texas

litigation which protects both parties and third parties from disclosure of confidential commercial information. See Dkt. Nos. 5, 6; Mem. Law in Opp'n Mots. Quash, Exs. E. The protective order provides that all documents designated as "confidential" or "highly confidential" are to be produced "for attorney's eyes only" and not divulged to the parties themselves. Id. MedEast does not explain why the Protective Order entered in the Texas litigation insufficiently protects its interests.[2] Thus, the subpoenas will not be quashed on the basis that they improperly seek production of highly confidential information.

      **C.**     **Whether the Subpoenas Are Harrassing.**

MedEast's final argument offered in support of its Motions to Quash is that Breg has issued the subpoenas in order to harass MedEast. Because I have found that the information requested in the subpoenas is not unduly burdensome and MedEast is protected from disclosure of highly confidential information by the Protective Order entered in the Texas litigation, MedEast's argument fails.

**III.**    **CONCLUSION.**

I will deny MedEast's Motions to Quash because MedEast does not establish undue burden under Rule 45(c)(3)(A). Any confidentiality concerns pursuant to Rule 45(c)(3)(B) associated with production according to the terms of the subpoenas are cured by the general Protective Order issued in the underlying Texas litigation. Further, it is not evident that the purpose of the subpoenas is to harass or annoy MedEast.

MedEast shall, for any document in its possession or control that may be

---

[2] Because MedEast's attorneys also represent Bledsoe in the Texas litigation, counsel drafted the protective order in that litigation and is aware of its protection to MedEast as a third party, thus making the argument that the subpoenas improperly seek production of highly confidential information all the more spurious.

responsive to the subpoenas and for which MedEast may contend is privileged, produce privilege logs as required by Rule 45(d)(2).  In compiling these privilege logs, MedEast shall identify as to each document: (1) the date of the document; (2) the full name, job title, and capacity of the author(s) and of each recipient of the document, including all persons copied; (3) the relationship between each recipient(s) and the client and/or author; (4) other individuals with access to the document and their capacities; (5) a description of the subject matter of the document with information sufficient to demonstrate the existence of the attorney-client privilege; (6) whether the primary purpose(s) of the document was to seek or provide legal advice or services and whether the document was transmitted in confidence; (7) sufficient information to demonstrate that each element of the attorney-client privilege is satisfied including a presentation of all factual grounds and legal analyses in a non-conclusory fashion; and (8) the Bates numbers of the withheld documents.  See generally Miller v. Pancucci, 141 F.R.D. 292, 302 (C.D.Cal. 1992); McCaugherty v. Siffermann, 132 F.R.D. 234, 238 (N.D. Cal. 1990); United States v. Exxon Corp., 87 F.R.D. 624, 637 (D.D.C. 1980)).

An appropriate Order follows.